## LUBELL v. KING.

No. 33375. March 14, 1950.

*216 P. 2d 325.*

Benjamin C. Conner, J. M. Winters, Jr., Gentry Lee, Roger S. Randolph, and Hess Crossland, all of Tulsa, for plaintiff in error.

Wheeler & Wheeler, of Tulsa, for defendant in error.

O'NEAL, J. This is an appeal from a judgment in favor of defendant in error, A. A. King, against plaintiff in error, Samuel Lubell. The parties will be referred to as plaintiff and defendant, as they appeared in the trial court.

June 28, 1945, plaintiff commenced this action in the common pleas court of Tulsa county, wherein he seeks judgment for the sum of $1,634.35, with interest thereon at 6 per cent per annum from June 26, 1945, alleged to be due on an oral contract for a commission in the sum of $1,000 and expenses in the sum of $634.35, incurred in the collection of a judgment rendered in the district court of Smith county, Texas, in favor of defendant, Lubell, as trustee for a syndicate against one A. M. Sutton. The syndicate was formed in New York to finance an oil venture in Arkansas, promoted by Sutton. Defendant, Lubell, was a trustee for the syndicate and owned a one-ninth beneficial interest. Sutton's venture was not successful and defendant, as trustee for the syndicate, obtained a judgment in the Chancery Court of Ouachita county, Arkansas, upon which there was a deficiency judgment of about $80,000. Sutton, having transferred his operations into the State of Texas, defendant, Lubell, as trustee, made a contract with Bennie Bender of Shreveport, Louisiana, and Pollard & Lawrence, attorneys of Tyler, Texas, to obtain judgment in Texas on the Arkansas judgment and enforce collection thereof on a contingent fee of 50 per cent of the amount collected. Pollard & Lawrence brought suit and obtained judgment in the district court of Smith county, Texas. Sutton seems to have had his assets fairly well concealed and Pollard & Lawrence had difficulty in finding property upon which to levy an execution. Sutton submitted an offer of $15,000 in full settlement of the judgment. Defendant and his associates rejected this offer. About that time plaintiff, A. A. King, who knew Bender in connection with some investigation having to do with hot oil transactions in Texas, learned that Bender was interested in the collection of the judgment against Sutton. He represented to Bender that he, King, had, or could obtain, information as to Sutton's assets which might lead to a collection of a substantial amount more than the $15,000 which Sutton had offered. Bender made some arrangements toward employing King in the matter and advanced, or agreed to advance, to King some $200 for expenses in making the investigation proposed by King. Sometime thereafter, and shortly before October 17, 1943, Bender and King met defendant, Lubell, in Dallas, Texas, and a discussion was had concerning the possibility of collecting a sum larger than $15,000 on the Sutton judgment. It was there suggested by defendant that plaintiff, King, and Bender go to Tyler, Texas, and

contact Pollard & Lawrence concerning the matter of employing plaintiff, King, to investigate concerning Sutton's assets. Plaintiff and Bender went to Tyler to see Lawrence, but no agreement was made. Thereafter, about December 17, 1943, plaintiff, King, made a trip to Tulsa, Oklahoma, and there met and talked with defendant. It is partly out of what transpired there and partly out of what had transpired prior thereto that gave rise to this lawsuit.

Sometime after December 17, 1943, Sutton had settled and paid off the judgment against him for the sum of $20,000. Thereafter plaintiff demanded payment from defendant of expenses alleged to have been incurred in making the investigation as to Sutton's assets. The amount claimed therefor was $488.06, less $100 which had been paid by Bender. Again, on or about January 27, 1945, plaintiff requested payment of expenses incurred in the matter in the sum of $388.06, and $500 commission on the amount recovered on the Sutton judgment in excess of the original offer of $15,000. Then, on June 28, 1945, plaintiff, King, commenced this action. He seeks recovery under an alleged oral agreement for the sum of $1,000, or 20 per cent of the $5,000 collected on the Sutton judgment in excess of the original offer by Sutton of $15,000, and expenses incurred in the matter in the sum of $634.55, with interest thereon at the rate of 6 per cent per annum from June 6, 1945.

To the petition of plaintiff, as finally amended, defendant answered by general and specific denial duly verified denying that Bennie Bender was the agent of defendant, Samuel Lubell. The answer further alleged that any promise set forth in the amended petition was a special oral promise to answer for the debt, default or miscarriage of another. Plaintiff's reply thereto was a general denial. The issues joined were tried to a jury resulting in a verdict and judgment in favor of plaintiff in the sum of $1,534.55, plus interest from June 26, 1945, at the rate of 6 per cent. After unsuccessful motion for new trial, defendant appeals.

There are ten specifications of alleged error, eight of which are separately presented. Specifications Nos. 9 and 10 are presented together. Specifications Nos. 1 and 2 may be considered together. It is contended that the trial court erred in overruling defendant's motion to make plaintiff's amended petition more definite and certain. The motion of defendant is, in effect, a motion to require defendant to elect upon which of two theories he would proceed.

In paragraph II of plaintiff's amended petition he alleges that during the month of July, 1943, defendant employed plaintiff to render services in the settlement of certain litigation wherein Lubell, as trustee of the Eli H. Bernheim Estate, was plaintiff and judgment creditor, and A. N. Sutton was defendant and judgment debtor; that said employment was made by and through one Bennie Bender who was the agent and representative of defendant, Samuel Lubell; that it was agreed between plaintiff and defendant at that time that plaintiff would render services in an attempt to collect the judgment against Sutton; that at said time the judgment debtor Sutton had made an offer of settlement in the sum of $15,000; that it was agreed between plaintiff and defendant, the defendant acting by and through his agent and representative Bennie Bender, that plaintiff was to be paid his reasonable expenses in his work and that plaintiff would be paid 20 per cent of any amount secured by defendant over and above the said sum of $15,000; that pursuant to said agreement plaintiff proceeded to embark upon his work, checking records and examining the same to determine what property might be found, and in connection therewith made several trips to Tyler, Texas, and Wood county, Texas, incurring the expenses in connection therewith.

In paragraph III of the amended petition plaintiff further alleged that on or about October, 1943, plaintiff met defendant, Lubell, in the Mayo Hotel in Tulsa, Oklahoma, at which time defendant, Samuel Lubell, ratified and confirmed the contract theretofore made between plaintiff and defendant, defendant acting by and through Bennie Bender, his agent and representative. That said agreement was oral and made between plaintiff and defendant; that plaintiff at that time advised defendant that Bennie Bender had advanced to him the sum of $100 as part payment of his expense account.

In paragraph IV of the amended petition plaintiff alleged that on or about December 17, 1943, plaintiff met defendant in Tulsa, Oklahoma, at which time they had a conversation in which plaintiff asked defendant about his authority to represent the trust estate and that defendant then stated that he did have authority to represent the trust estate, but if plaintiff was not satisfied as to such authority he, defendant, would then and there enter into an agreement personally between himself and plaintiff, whereby plaintiff would continue his service in an attempt to settle the judgment, and further:

". . . And that at said time and place the defendant, Samuel Lubell, for a good and adequate consideration hereinafter set forth did then and there enter into an oral agreement with this plaintiff whereby Samuel Lubell, personally, and not as Trustee, did employ this plaintiff to collect said judgment aforesaid and to attempt to collect judgment, or as much thereof as was possible, and that the defendant, Samuel Lubell, did agree with this plaintiff to pay the plaintiff 20% of all sums recovered in the settlement that might be made over and above the sum of $15,000.00.

"That thereafter the said judgment was settled through the joint efforts of the plaintiff and the defendant for the sum of $20,000.00, and that plaintiff is entitled to a judgment against the defendant for the aforesaid expenses and the sum of $1,000.00."

Paragraph 1 of the defendant's motion is as follows:

"That the plaintiff be required to state whether as grounds for recovery he relies upon the contract of employment as alleged and referred to in paragraphs II and III of the plaintiff's amended petition, or whether as grounds for recovery he relies upon the agreement alleged and referred to in paragraph IV of the plaintiff's amended petition."

That paragraph of defendant's motion was clearly a motion to require plaintiff to elect.

In Caprock Oil Co. v. Hagan, 182 Okla. 124, 76 P. 2d 243, where a similar question was involved, it was held:

"Where H. sued C. for brokerage fees upon the theory of a contract through C.'s agent P., and upon the theory of ratification by C. and estoppel, and further alleges a contract with C., through C.'s president, held, C.'s motion to strike and other pleadings designed to require H. to elect should have been sustained; . . ."

Defendant points out that a motion to make more definite and certain is addressed largely to the discretion of the trial court and that a ruling thereon will not be reversed on appeal except for abuse of discretion resulting prejudicially to the movant.

Defendant further calls attention to the fact that although this court held that the motion in the Caprock Oil Co. case, supra, should have been sustained, the judgment was not reversed and the reason therefor was because the error was not prejudicial to the defendant. But the real reason, as shown by the opinion, was that the question of agency became immaterial because defendant had admitted all the essentials necessary in order to make it liable. Such is not the case here. Defendant denies each and every essential element necessary to make him liable. The ruling is highly material and prejudicial in view of another matter permitted over the objection of defendant to re-

main as a part of the amended petition complained of here by defendant under the second specification of error.

Attached to the amended petition as an exhibit, and made a part thereof, is a copy of a statement purporting to have been made by the alleged agent Bennie Bender as follows:

"To Whom It May Concern:

"I, the undersigned, Bennie Bender, do hereby certify, that I was employed by Samuel L. Lubell, Trustee, to assist him in the prosecution of a claim against A. M. Sutton, and the collection thereofo (sic) he being the plaintiff and a judgment was recovered as of record in Volume 8, page 314 of Smith County, State of Texas.

"I further pursuance (sic) of the collection of the judgment, I did employ A. A. King of Dallas, Texas, on July 28, 1943, to assist in the collection of the judgment. This was done with the full knowledge and consent by the Trustee, Samuel L. Lubell as confirmed by letters, telegrams, telephone calls and verbally.

"On July 23, 1943 and before employment of A. A. King, the best offer for settlement made by the defendant was $15,000.00.

"In June, 1944, the plaintiff accepted a settlement in the amount of $20,000,00.

"The claim for reimbursement for expenses incurred and interest in the recovery as set out by Mr. King is fair and justified and he should be paid in full by the Trustee, Samuel L. Lubell, upon whom rests the responsibility to do so.

"Signed: Bennie Bender
"January 26, 1945."

If plaintiff was relying on his contract alleged to have been made by and through Bennie Bender, as agent and representative of defendant, then it was wholly unnecessary to mention the oral agreement alleged to have been entered into about December 17, 1943. On the other hand, if plaintiff was relying on the alleged oral contract of December 17, 1943, between himself and defendant individually, and not as trustee, then all the allegations about the alleged agreement between plaintiff and defendant, the latter acting by and through Bennie Bender, his agent and representative, had no place in the proceedings. In either event, there was error highly prejudicial to defendant in overruling the motion of defendant to strike defendant's Exhibit C and particularly that part thereof which purported to be a voluntary, unverified statement of Bennie Bender, the alleged agent. It was likewise error to overrule defendant's motion to require plaintiff to elect under which of the two theories he desired to proceed. Defendant next contends that it was error to admit in evidence a copy of a telegram apparently sent by Bennie Bender to defendant Samuel Lubell, dated September 18, 1943. Said telegram was not identified and not shown to have had any connection with this case, except that it did say:

"Consider it imperative to have conference with you and Fox and King. . . ."

It does possibly tend to show that defendant had some knowledge of some dealing between Bender and King as early as September 18, 1943. While the telegram may not have been properly identified, and not admissible without some evidence tending to connect it with this case, the error, if any, in admitting it was clearly harmless.

It is next contended that the court erred in refusing and ruling out competent and legal evidence offered by defendant. In this connection, defendant contends that he was unduly restrained in the cross-examination of plaintiff. In this there is, as to part of the matters complained of, some merit. In one instance plaintiff had testified as to some investigation he had made prior to December 17, 1943, with reference to the ownership by Sutton of some stock in a company known as the Nivell Oil Company and that it was necessary for him to get additional information which he was trying to run down. He was then asked

what he had found out, or whether he had learned anything after that date. That was objected to and the objection sustained. The question was proper as to cross-examination. Defendant was entitled to inquire as to what efforts plaintiff had made, and what, if anything, he had learned after the date of his alleged employment by defendant.

Again plaintiff was asked on cross-examination what efforts of plaintiff, if any, enabled the attorney to get the additional $5,000. That was objected to on the ground that "his testimony is that he had a contract." The objection was sustained. This, we think, was error. Defendant was entitled to cross-examine plaintiff, not only as to what efforts plaintiff had made under his alleged contract, but also as to what he had learned, which he contended aided or assisted in obtaining the additional $5,000.

In Weleetka Light and Water Co. v. Burleson, 42 Okla. 748, 142 P. 1029, it was held:

"On cross-examination of a plaintiff claiming a salary due for personal services, it is 'material' and proper to direct questions against the claim and manner and form of performance of such services and against faithfulness in such performance."

When defendant was testifying concerning a conversation he had with plaintiff in Dallas sometime in October, 1943, he was asked:

"Mr. Lubell, was any other matters talked about between you and Mr. King at that time?"

He answered:

"Yes. He asked me if I could use him in obtaining oil leases; that he had large connections with major companies and he could get wonderful leases for drilling purposes."

That was objected to as incompetent, irrelevant and immaterial and the objection was sustained and the answer ordered stricken.

Plaintiff's itemized statement of expenses claimed included a trip to Tulsa, Oklahoma, October 16 and 17, 1943; a trip to Tulsa, Oklahoma, on November 16 and 17, 1943, and a trip to Tulsa, Oklahoma, on December 16 and 17, 1943.

Defendant had testified that in his conversation with plaintiff in Tulsa nothing was said about the Sutton judgment and the only matters discussed were the sale of oil leases. The expenses claimed by plaintiff for the three trips to Tulsa amounted to $235.95, nearly half of the total amount claimed. The first two trips to Tulsa were before December 17, 1943, and the last trip was December 16, 17, 1943. Plaintiff claimed his agreement with defendant was made on December 17, 1943. The matters inquired about were proper and should have been admitted. It is material in that it is entirely possible that the trips made by plaintiff to Tulsa, Oklahoma, may have been made for the purpose of obtaining the contract sued upon since there was no evidence of any investigation as to Sutton or Sutton's property in Tulsa.

Defendant further contends that the trial court erred in refusing to admit testimony of W. Dewey Lawrence, one of the attorneys who obtained the judgment against Sutton in Texas, concerning who had actually obtained information concerning Sutton's assets which enabled Lubell to get the extra $5,000. Most, if not all, of the testimony of the witness, and particularly that part of it as to what, if any, information King had furnished, looking to the collection of the judgment, was competent and should have been admitted. That part of the testimony of the witness relating to correspondence between the witness and David J. Fox, the New York attorney for the syndicate, was mostly hearsay and inadmissible and was properly rejected.

Other alleged errors are complained of, but they concern matters not likely to arise in another trial.

The judgment is reversed and the case is remanded, with directions to grant defendant a new trial.

GIBSON, LUTTRELL, HALLEY, and JOHNSON, JJ., concur. DAVISON, C. J., ARNOLD, V. C. J., and WELCH and CORN, JJ., dissent.